```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF VIRGINIA
                              Richmond Division
```

UNITED STATES OF AMERICA

v.                                              Criminal No. 3:07cr77

JOSE VENTURA-PUQUIR,

        Defendant.

**MEMORANDUM OPINION**

     The Defendant appeals his conviction for trespassing on a military fort in violation of 18 U.S.C. § 1382. For the reasons set forth below, the conviction is affirmed.

**PROCEDURAL POSTURE**

     After a bench trial on March 1, 2007, Judge Dohnal found the Defendant, and two co-defendants, guilty of violating 18 U.S.C. § 1382, which states: "Whoever, within the jurisdiction of the United States, goes upon any military . . . fort . . . for any purpose prohibited by law or lawful regulation . . . shall be [subject to criminal punishment]." The Defendant appeals his conviction (Docket No. 12) and notes three grounds for appeal (Docket No. 15):

    (1)  insufficient evidence of the required <u>mens rea</u> because the Defendant was merely the passenger in a vehicle driven by another person;

    (2)    improper admission of hearsay evidence where a Government witness was not its proper custodian and therefore could not testify to its authenticity and reliability;

    (3)    insufficient evidence to prove that the Defendant entered Fort Lee for any improper purpose.

## STATEMENT OF FACTS

On January 8, 2007, the Defendant and five other individuals entered Fort Lee in a van to "do work on the post." (Trial Tr. vol. 1, 10, Feb. 22, 2007.) The Defendant was a passenger in the van. (Id. at 12.) Wendy Jones, a security officer at Fort Lee, stopped the van at the main gate and checked the occupants' identification documents. (Id. at 8, 10.) One of the identification documents (belonging to one of the Defendant's companions) was purportedly issued by the state of Arizona but appeared to be fraudulent. (Id. at 10-11.) Officer Jones pulled the van over and contacted other Fort Lee personnel. (Id. at 11.) She noticed nothing suspicious about the Defendant's identification. (See id. at 11-12.)

After Officer Jones called for additional Fort Lee personnel, a Fort Lee military police investigator, Investigator Villarreal, arrived on the scene.[1] (Id. at 15.) Investigator Villarreal

---

[1] Investigator Villarreal speaks Spanish. (Trial Tr. vol. 1, 15-16.)

received a briefing from Officer Jones, then took possession of the identification cards.  (Id. at 17.)  He asked the person who possessed the fraudulent Arizona driver's license to step out of the vehicle, asked that person a few brief questions, had a "desk sergeant" (with whom he communicated by telephone) check the validity of the license, then, after confirming that the Arizona license was fraudulent, asked each of the other passengers to exit the van one-by-one.  (Id. at 17-18.)  As the passengers, including the Defendant, exited the van, Inspector Villarreal asked each of them if their respective identification documents were theirs (each responded yes), and whether they had "permission or . . . proper documentation to be in the United States."  (Id. at 18.)  Each person, including the Defendant, told Inspector Villarreal that he did not have permission or proper documentation to be in the United States.  (Id. at 19.)  Although the Defendant admitted to being in the United States illegally, Inspector Villarreal testified that a check of the Defendant's identification document revealed it to be valid.[2]  (Id. at 20-22.)  The Defendant and his companions were transported to another facility to have their immigration and criminal histories checked.  (Id. at 20.)

The bench trial in this case was conducted over the course of

---

[2] It appears that the Government was prepared to prove that the documents, although genuine, were fraudulently obtained (see Trial Tr. vol. 1 25-31), but the evidence was excluded for irrelevance (id. at 30-31).

two days.  On February 22, 2007, the Government introduced testimony from Officer Jones, Investigator Villarreal, and Murray Trelford (whose testimony is not relevant to this appeal).  After the Government rested, the Defendant moved for a judgment of acquittal and argued that the Government had not produced his immigration records to prove that he was in the country illegally. (Id. at 31, 36-38.)  Judge Dohnal did not indicate that he believed such evidence was required (given the Defendant's admissions to Inspector Villarreal) but, nevertheless, continued the trial for one week to allow the Government time to procure the Defendant's immigration files.  (Id. at 36, 53.)

One week later, on March 1, 2007, the Government introduced testimony from Special Agent Faris Moore, who is employed by United States Immigration and Customs Enforcement (ICE).  (Trial Tr. vol. 2, 5, Mar. 1, 2007.)  Special Agent Moore relied on printed copies of a computer database (not the Defendant's actual immigration file) to testify that the Defendant was in the country illegally on the date of his offense (January 8, 2007).  (Id. at 7-10.)  The Defendant raised a hearsay objection to Special Agent Moore's testimony.  (Id. at 10.)  Special Agent Moore testified that the computer print-outs upon which he relied reflected records kept in the ordinary course of business by immigration and customs officials; that the immigration files on which the computer print-outs are based are maintained in a secure environment; that

immigration agents rely on computer summaries of immigration files to obtain the immigration history of individuals; that procedures are in place to ensure the accuracy of the information reflected in the computer database; and that, although he did not personally print the particular print-outs he was using (they were sent to him by facsimile), he personally checked them against the computer database and confirmed that they reflected what appeared on the computer database.  (See id. at 11-23.)  Judge Dohnal admitted Special Agent Moore's testimony, and the documents on which he relied, over the Defendant's hearsay objection.  (Id. at 28.)

Judge Dohnal subsequently found all three defendants guilty of violating 18 U.S.C. § 1382.  (Id. at 31.)  Although the Government did not produce any immigration documentation to prove that the other two co-defendants were in the country illegally, Judge Dohnal determined that their admissions to Investigator Villarreal were sufficient to sustain the Government's burden of proof on that point.  (Id.)  As noted above, the Defendant now appeals his conviction, arguing that the Government adduced insufficient evidence to prove mens rea, that Judge Dohnal erred in admitting Special Agent Moore's testimony and related documentation, and that the Government failed to prove that the defendant was at Fort Lee for any improper purpose.

**DISCUSSION**

An appeal of a criminal conviction by a magistrate judge lies with a judge of the district court from the district in which the offense was committed. 18 U.S.C. § 3402. The scope of appeal "is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).

**1. Did the Government Adduce Sufficient Evidence of the Defendant's Mens Rea?**

When a criminal defendant appeals a conviction by a magistrate judge, "the evidence must be reviewed in the light most favorable to the United States." United States v. Fletcher, 344 F. Supp. 332, 335 (E.D. Va. 1972). Where sufficiency of the evidence is at issue, the Court must determine whether "the evidence would permit the trier of the facts to find the defendant guilty beyond a reasonable doubt." Id. The verdict must be sustained if there is substantial evidence, viewed in the light most favorable to the Government, to support it. United States v. Jones, 735 F.2d 785, 790 (4th Cir. 1984).

Here, the Defendant claims that the Government did not prove that he was willfully and voluntarily on Fort Lee property on January 8, 2007. (See Br. in Supp. of Grounds of Appeal ("Def.'s Br.") at 1.) Citing Virginia law, he argues that willfulness and voluntariness cannot be inferred where a defendant was merely a passenger in a vehicle driven by someone else. (Id. at 1-2 (citing Lipscomb v. Commonwealth, 2001 Va. App. LEXIS 237).)

6

In a letter written to the parties before trial, Judge Dohnal, citing United States v. Montague, 75 F. Supp. 2d 670, 671 (S.D. Tex. 1999), informed the parties that "[i]t is constitutionally acceptable that a person be responsible for being where he is, as long as he got there by a conscious voluntary act."  (Gov't's Resp. to Def.'s Appeal of Magistrate Judge's Conviction for Trespass ("Gov't's Resp.") Ex. 3 at 2 (Letter from J. Dohnal to Defense Counsel, Feb. 15, 2007).)  That legal standard was applied by Judge Dohnal during the trial (see Trial Tr. vol. 1, 51) and is analogous to the standard of willfulness and voluntariness proposed by the Defendant.  Under either legal standard, the evidence in the record is sufficient to support a finding of the requisite mens rea.

In United States v. Ventura-Melendez, two defendants contested their convictions under 18 U.S.C. § 1382 (the statute at issue here) by contending that at least one of them was a "mere passenger" in a boat which had trespassed on waters secured by the United States Navy.  321 F.3d 230, 235 (1st Cir. 2003).  The defendants argued that someone who was a "mere passenger" lacked the "purpose" required by § 1382.  Id.  The First Circuit rejected that argument.  See id.  According to the First Circuit, both occupants of the boat "were involved in shouting and waiving their fists" at the Coast Guard boat that apprehended them.  Id.  More importantly, according to the First Circuit, "the evidence [did] not reveal any suggestion that either defendant at any time

7

expressed a desire to exit the boat, turn it around, or otherwise leave the security zone." Id. "Without more," the First Circuit concluded, "it is difficult to conceive that the actions of either defendant were not purposeful." Id.

The situation here is analogous.[3] Assuming, arguendo, that the Defendant is correct, and that willfulness and voluntariness may not be inferred merely because a person is a passenger in a car, the record supports Judge Dohnal's conclusion that the Defendant entered Fort Lee voluntarily and willfully. First, the Defendant does not claim that he was in the van against his will. Second, it is undisputed that the Defendant and his companions were entering Fort Lee to work, and, when stopped at Fort Lee's main gate, the Defendant, like everyone else in the van, provided identification in an effort to gain admittance to the Fort. Third, as in Ventura-Melendez, there is no evidence whatsoever that the Defendant did not want to be where he was, or doing what he was doing. Thus, taken together, there is substantial evidence, viewed in the light most favorable to the Government, to permit the inference that the Defendant was on Fort Lee as a result of a conscious, voluntary, and willful act.

---

[3] While, conceptually, an argument respecting a defendant's purpose in entering a military installation is distinguishable from an argument respecting the voluntariness or willfulness of a defendant's entry onto that installation, the two arguments are, for all practical purposes, analogous.

8

## 2. Was Special Agent Moore's Testimony Properly Admitted Into Evidence?

Evidentiary rulings are entitled to substantial deference and are reviewed for abuse of discretion. United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994). Discretion is abused only when a judge acts "arbitrarily or irrationally." Id. An error is harmless if the judgment "was not substantially swayed by the error." United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997) (internal quotations and citations omitted).

Here, any error committed by Judge Dohnal would be harmless. The Defendant admitted to Investigator Villarreal that he was in the United States illegally, and the Defendant has not articulated any legal principle which renders that admission insufficient to establish the Defendant's immigration status. The Defendant claims that he was "entitled to have his legal status determined by the Court pursuant to the Magistrate's Order to produce his immigration file," but he offers no legal authority to support that position. (See Def.'s Br. at 2.) Therefore, even if Special Agent Moore's testimony, and the related documentation, were excluded, there remains substantial evidence (in the form of the Defendant's admission to Investigator Villarreal) that would enable a reasonable fact finder to conclude that the Defendant was in the country illegally on January 8, 2007.

That said, Judge Dohnal did not err in admitting Special Agent Moore's testimony and the computer print-outs on which his

9

testimony was based. The Defendant apparently objects to that evidence because, according to the Defendant, the print-outs were not properly authenticated and because those documents, and any testimony relying on them, constitute inadmissible hearsay. (See id.) The Defendant is incorrect.

Under Federal Rule of Evidence 901(a), the requirement of authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(b) then goes on to provide a non-exhaustive list of the methods by which a document may be authenticated, including the testimony of a witness with knowledge. Fed. R. Evid. 901(b)(1). Here, the computer print-outs were sent to Special Agent Moore by facsimile, but Special Agent Moore then compared them to what was displayed in the computer database and concluded that the print-outs accurately reflected the information in the computer database. He therefore authenticated the print-outs by confirming that they were what they purported to be (copies of information found in an ICE computer database), and Judge Dohnal did not err in determining that Special Agent Moore's method of authentication satisfied the requirements of Rule 901(a).

However, under Rules 801 and 802, even authenticated documents are inadmissible hearsay if they are written statements made by someone other than the declarant and are offered to prove the truth of the matter asserted. Here, the Defendant contends that the

computer print-outs, even if authentic, are inadmissible hearsay because Special Agent Moore was not a "proper custodian" of the records on which the print-outs were based. (See Def.'s Br. at 2.) In referencing a "custodian," the Defendant presumably is referring to Rule 803(6), which provides an exception to the hearsay rule for records of regularly conducted activity.[4] Under that exception, a data compilation in any form, which would otherwise be excluded as hearsay, is admissible if it meets certain criteria which are established by the testimony of the data compilation's <u>custodian or other qualified witness</u>. See Fed. R. Evid. 803(6). Here, Special Agent Moore is an "other qualified witness." The Defendant does not argue otherwise (indeed, he contends only that Special Agent Moore was not the data compilation's "custodian"). Special Agent Moore testified, based on personal knowledge and experience, that the computer print-outs on which he relied reflected information that was transmitted by persons with knowledge, that the information was entered into a computer database in the course of regularly conducted business activity, and that it was the regular practice of ICE to make the data compilation on which he relied. His testimony was therefore sufficiently reliable to satisfy the hearsay exception under Rule 803(6), and Judge Dohnal did not abuse

---

[4] The Government apparently concedes that the computer print-outs on which Special Agent Moore relied constitute hearsay and may only be admitted under a hearsay exception linked to the reliability of the proffered evidence. (See Gov't's Resp. at 12-13.)

his discretion in admitting it.

### 3. Was There Evidence that the Defendant Entered Fort Lee for an Improper Purpose?

The standard of review for sufficiency of evidence is cited above. Questions of law are reviewed de novo. United States v. Han, 74 F.3d 537, 540 (4th Cir. 1996).

Under § 1382, "the requisite prohibited 'purpose' . . . can consist of unauthorized entry itself," and "no 'specific intent,' in the strict sense, to violate the law or regulation prohibiting such entry need be shown." United States v. Bonilla, 648 F.2d 1373, 1377 (1st Cir. 1981). Unlawful entry alone may serve as the requisite "purpose" because § 1382 does not "limit the class of regulations violation of which will serve as an element of the offense." Id. However, where "the proscribed 'purpose' consists of no more than the entry itself," the Government must prove "that, at a minimum, the defendant had notice of the prohibition of entry upon the military reservation, yet entered anyway." Id. at 1378.

Here, the Defendant claims that he had no "notice of any prohibition" against entering Fort Lee. (Def.'s Br. at 4.) Moreover, he claims that there was "no evidence that [he] even knew he was entering Fort Lee until after the vehicle in which he was riding stopped at the gate." (Id.)

As discussed above, the record contains evidence which is sufficient to permit the inference that the Defendant knew he was entering Fort Lee, and contains no evidence that he resisted

entering Fort Lee at any point. Moreover, the Defendant admitted to Investigator Villarreal that he was in the United States illegally, and it is therefore permissible to infer that the Defendant knew (and was on notice) that any entry onto a United States military base situated in the United States of America would constitute an illegal act.

The Defendant points out that Bonilla and similar "illegal entry" cases involved the violation of specific regulations related to entry onto a military installation. However, he does not explain the significance of the distinction he draws (implicitly) between those cases and this one. (See id. at 3-4.) For example, he does not argue that entry onto a military base as an illegal alien is insufficient to satisfy the "purpose" requirement of § 1382. (See id.) In any event, the decision below must be upheld if the evidence was sufficient to prove, beyond a reasonable doubt, that the Defendant had notice that his entry onto Fort Lee was prohibited by law and that he entered anyway. Because the record supports such a conclusion, as explained above, the Defendant's conviction must stand.

## CONCLUSION

For the foregoing reasons, the judgment is affirmed.

The facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the

decisional process.

The Clerk is directed to send a copy of the Memorandum Opinion to all counsel of record.

It is so ORDERED.

/s/<br>
Robert E. Payne<br>
Senior United States District Judge

Date: August 23, 2007
Richmond, Virginia